STATE OF MINNESOTA					DISTRICT COURT

COUNTY OF WASHINGTON				TENTH JUDICIAL DISTRICT

Court File No.:
Judge:
Case Type: Property

---

Kenneth M. Njema

    Plaintiff

v.                                  **COMPLAINT**

Wells Fargo Bank, N.A.

    Defendant

---

## Parties

1. Plaintiff Kenneth M. Njema resides at 6796 Pine Crest Trail South in Cottage Grove, Minnesota ("The Property").

2. Defendant Wells Fargo Bank is a national bank with its headquarters in San Francisco, California. Wells Fargo has offices, including mortgage servicing offices, throughout the State of Minnesota.

## Venue and Jurisdiction

3. Venue lies in this court pursuant to Minn. Stat. § 542.01. This court has jurisdiction pursuant to Minn. Stat. § 484.01.

## Factual Allegations

4. On May 27, 2005, Plaintiff and his sister Hellen Njema purchased The Property and entered into a mortgage agreement ("Mortgage" or "Agreement")

1

with Universal American Mortgage Company, LLC ("Universal American") in the amount of $178,050.00. The legal description of the Property is Unit #302, Pine Arbor Lodges, Common Interest Community #228, Washington County, Minnesota. The Mortgage is attached at Exhibit 1.

5. The Mortgage was insured by the Federal Housing Administration.

6. The Mortgage provides in Paragraph 9 that acceleration of payments and/or foreclosure will not occur if not permitted by regulations of the HUD Secretary.

7. The Mortgage Agreement was bargained for by the parties to the Agreement, and all the provisions contained in the agreement are binding and legally enforceable.

8. Beginning in or around March 2011, Plaintiff and his sister began falling behind in their monthly mortgage payments.

9. Regulations of the HUD Secretary (24 C.F.R. 203.604(b)) provide that, absent certain exceptions, a mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable attempt to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. Upon information and belief, that was not done with respect to The Property even though none of the enumerated exceptions were applicable.

10. On or about August 3, 2011, the Mortgage was assigned to Defendant.

11. In July 2011, without lawful permission, authorization or advance notice, Defendant changed the locks on The Property and locked Plaintiff out of his lawful residence. Defendant knew at the time, or should have known, that Plaintiff

2

was living at The Property. This trespass caused Plaintiff to experience inconvenience and emotional distress.

12. In September 2011, Plaintiff retained the services of a realtor in an effort to sell The Property.

13. On or about October 22, 2011, Plaintiff was approved to participate in the HUD Pre-foreclosure Sale Procedure. The approval provided that The Property must be listed at or near $102,000.

14. On or around February 26, 2012, Plaintiff received an offer to purchase The Property for approximately $95,000. Defendant rejected the offer amount and on or about March 26, 2012 Defendant agreed to a sale price of $102,000. The prospective purchaser accepted the counter-offer on or about April 4, 2012.

15. In or around March 2012, without lawful permission, authorization or advance notice, Defendant again changed the locks on The Property and locked Plaintiff out of his home. Defendant knew at the time, or should have known, that Plaintiff was living at The Property. This trespass caused Plaintiff to experience inconvenience and emotional distress.

16. As a result of Defendant changing the locks on The Property, one or more scheduled showings of The Property had to be cancelled.

17. On or about April 10, 2012, Defendant initiated foreclosure proceedings against The Property.

18. Defendant did not approve the above-referenced purchase agreement and on or about May 23, 2012, the buyer submitted a notice of cancellation.

19. HUD guidelines provide that "[f]orclosure should not be started if it appears that a bona fide sale is probable." Upon information and belief, at the time Defendant started foreclosure proceedings against The Property, Defendant believed that a bona fide sale of The Property was probable. See HUD Handbook 4330.1 Rev-5, Chapter 9.

20. The Property was the subject of a Sheriff sale on May 31, 2012. Defendant was the only bidder.

21. Following the Sheriff sale, Defendant engaged in a variety of conduct of a harassing nature. Defendant's agents would watch Plaintiff and when they saw him leave The Property, would enter The Property and attempt to secure the Property. At the time of such actions, Defendant knew or should have known that Plaintiff was residing at The Property. On one occasion an agent of Defendant entered The Property, turned off the power, sealed the windows, and drilled out the lock, at which time Plaintiff returned to The Property.

22. The purported redemption period expired on or about November 30, 2012. Plaintiff did not redeem The Property.

23. HUD Secretary regulations (24 C.F.R. Section 203.675) required Defendant to send a Notice of Pending Acquisition to the occupant(s) of The Property at least 60 days but not more than 90 days before the anticipated acquisition date. Defendant never so notified Plaintiff, the sole occupant of the Property.

24. If Defendant had mailed a Notice of Pending Acquisition to Plaintiff, Plaintiff would have submitted a Request for Continued Occupancy to HUD. Upon information and belief, the request would have been granted.

25. On or about December 28, 2012, Defendant commenced eviction proceedings against Plaintiff (Case No. 82-CV-12-7104).

## COUNT 1 – Breach of Contract

26. Plaintiff realleges Paragraphs 1 through 25 as if fully set forth herein.

27. The Mortgage Agreement required that the mortgagee not initiate foreclosure proceedings without first attempting to initiate a face-to-face interview with the mortgagor prior to the mortgagor being three months in arrears in an effort to avoid foreclosure. This requirement was a "condition precedent" that had to be satisfied prior to the initiation of foreclosure proceedings.

28. Upon information and belief, the mortgagee failed to take reasonable efforts to attempt to initiate a face-to-face interview with the mortgagors.

29. Such inaction by the mortgagee constituted a material breach of the Mortgage Agreement.

30. Upon information and belief, but for this breach, Plaintiff would have been able to avoid foreclosure.

31. The aforementioned breach by mortgagee caused damages to Plaintiff.

32. As the assignee of the Mortgage Agreement, Defendant is lawfully liable for the aforementioned breach.

## COUNT 2 – Breach of Contract

33. Plaintiff realleges paragraphs 1 through 32 as if fully set forth herein.

34. The Mortgage Agreement required that the mortgagee mail to the occupants of The Property at least 60 days before the expiration of the redemption period a Notice of Pending Acquisition. This requirement was a "condition precedent" that had to be satisfied prior to the initiation of eviction proceedings.

35. Plaintiff, the sole occupant of The Property during that time period, never received such Notice. If Plaintiff had received such Notice he would have submitted a Request for Continued Occupancy to HUD. Upon information and belief, the criteria for approval of such a request would have been met and the request would have been granted by HUD.

36. Such failure by Defendant constituted a material breach of the Mortgage Agreement.

37. The aforementioned breach by mortgagee caused damages to Plaintiff.

## COUNT 3 – Intentional Misrepresentation

38. Plaintiff realleges paragraphs 1 through 37 as if fully set forth herein.

39. Defendant represented that it would approve a short sale for a purchase price of $102,000. Plaintiff entered into a purchase agreement with a prospective buyer for $102,000. Defendant did not act with due diligence in approving the sale and on or about May 23, 2012 the prospective buyer subsequently cancelled the purchase agreement.

40. Plaintiff relied on Defendant's representation to his detriment. But for Defendant's representation, Plaintiff would not have spent substantial time and energy in an effort to sell The Property for $102,000 and would have explored alternative avenues to avoid foreclosure.

41. As a result of this misrepresentation, Plaintiff has suffered damages.

### COUNT 3 – Trespass

42. Plaintiff realleges Paragraphs 1 through 41 as though fully set forth herein.

43. While Plaintiff was the rightful owner and possessor of The Property, agents of Defendant without authorization, permission, or lawful authority entered The Property for the purpose of, inter alia, removing and replacing the locks on The Property.

44. Such actions had the effect of precluding and preventing Plaintiff from entering his residence.

45. At the time of these actions, Defendant knew that Plaintiff was the lawful owner of The Property.

46. At the time of these actions, Defendant knew or should have known Plaintiff was residing on The Property.

47. Plaintiff was damaged and injured in his person and property as a result of Defendant's illegal trespass.

### COUNT 4 – Wrongful Foreclosure

48. Plaintiff realleges Paragraphs 1 through 47 as though fully set forth herein.

49. Defendant had a legal duty pursuant to the Mortgage Agreement and 24 C.F.R. § 203.604 to take reasonable efforts to arrange a "face-to-face" meeting with Plaintiff prior to initiating foreclosure proceedings to discuss and evaluate possible measures that could be taken to avoid foreclosure.

50. Defendant breached that duty by failing to take reasonable efforts to arrange such a "face-to-face" meeting.

51. As a result and because of Defendant's breach in that regard, Plaintiff sustained injury and damages.

## COUNT 5 – Intentional Infliction of Emotional Distress

52. Plaintiff realleges Paragraphs 1 through 51 as though fully set forth herein.

53. As discussed herein, Defendant and the assignor of the mortgage to Defendant engaged in a pattern of conduct that was either intentionally designed to force Plaintiff into foreclosure and subsequent eviction, or was reckless and without regard to the impact and harm the conduct would cause to Plaintiffs.

54. Among such conduct was the following: a) mortgagor failed to make reasonable efforts to arrange a face-to-face meeting with Plaintiff prior to initiating foreclosure as required by HUD regulations, b) Defendant failed to approve a short sale for $102,000 after indicating that it would, c) Defendant failed to send Plaintiff a Notice of Pending Acquisition prior to initiating eviction proceedings as required by HUD regulations, d) Defendant, contrary to HUD guidelines, proceeded with foreclosure even though a bona fide sale was probable, e) Defendant on multiple occasions trespassed onto The Property to change locks,

even prior to expiration of the redemption period, and e) Defendant is now seeking to evict Plaintiff from The Property even though it has not properly foreclosed on The Property.

55. Such conduct was and is extreme and outrageous and caused and is causing Plaintiff substantial emotional distress.

## PRAYER FOR RELIEF

1. Plaintiff requests that the Court find that Defendant engaged in the unlawful conduct alleged in this complaint.

2. Plaintiff requests that the Court award compensatory in an amount sufficient to fully compensate Plaintiff for the damages he incurred as a result of Defendant's violations of law.

3. Plaintiff request that the Court find that Defendant did not substantially comply with the statutory mortgage procedures, rendering the foreclosure null and void.

4. Plaintiff requests that the ongoing eviction proceedings (82-CV-12-7104) be stayed pending resolution of this case.

5. Plaintiff request that the Court award costs, disbursements, and reasonable attorney fees to the full extent allowed by law, and

6. Plaintiffs request that the Court order any other relief it deems just and equitable.

Dated: February 13, 2013

*[signature]*

Steven E. Uhr (No. 0284038)
Attorney for Plaintiff

Law Office of Steven E. Uhr, PLLC
4524 Balfanz Rd.
Edina, MN 55435
(952) 239-0346

## ACKNOWLEDGEMENT

The Plaintiff hereby acknowledges that sanctions may be imposed against him pursuant to Minn.Stat. Section 549.211 if this pleading does not comply with subdivision 2 of that statue.

Dated February 14, 2014

*[signature]*

Steven E. Uhr (No. 0284038)
Attorney for Plaintiff

Law Office of Steven E. Uhr, PLLC
4524 Balfanz Rd.
Edina, MN 55435
(952) 239-0346

3524045



Office of the
County Recorder
Washington County, MN

Certified filed and/or recorded on:
2005/07/06   3:49:00 PM

**3524045**



Cindy Koosmann
County Recorder

**WASHINGTON COUNTY**
Receipt No: 216408    Date: 6/23/2005
Registration tax hereon of: $409.58 PAID
MN Conservation Fund M.S. 473h $5.00 PAID
Molly F. O'Rourke, Auditor by BAFrans

———————————————[Space Above This Line For Recording Data]———————————————

**State of Minnesota**

# MORTGAGE

FHA Case No.

271-9186475-734

Return To:

MIN

Universal American Mortgage Company, LLC
Secondary Marketing Ops    Loan #
311 Park Place Blvd, Suite 500
Clearwater, FL 33759-3999

THIS MORTGAGE ("Security Instrument") is given on **May 27, 2005**
The Mortgagor is **KENNETH M NJEMA, AN UNMARRIED MAN AND HELLEN NJEMA, AN UNMARRIED WOMAN**

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Universal American Mortgage Company, LLC, a Florida limited liability company**
("Lender") is organized and existing under the laws of **Florida**                                    , and
has an address of **700 NW 107th Avenue 3rd Floor, Miami, FL 33172-3139**
. Borrower owes Lender the principal sum of
**One Hundred Seventy Eight Thousand Fifty and 00/100**
Dollars (U.S. $    **178,050.00**    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **June 01, 2035**
and for interest at the yearly rate of **Five and Three Quarters** percent. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,

FHA Minnesota Mortgage with MERS - 4/96
VMP-4N(MN) (0305)           Amended 2/01
Page 1 of 8           Initials: HN  KN
VMP Mortgage Solutions (800)521-7291

TITLE PROTECTION INC.
5001 W 80th St Ste 255
Bloomington, MN 55437
TL 128157

EXHIBIT A



extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in **WASHINGTON**
County, Minnesota:
**UNIT # 302, PINE ARBOR LODGES, COMMON INTEREST COMMUNITY # 128, WASHINGTION COUNTY, MINNESOTA. BEING ABSTRACT LAND.**

Parcel ID Number: **05-027-21-34-0109**
which has the address of **6796 PINE CREST TRAIL SOUTH** [Street]
**COTTAGE GROVE** [City], Minnesota **55016** [Zip Code] ("Property Address");

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
    **1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
    **2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures

Initials: HN / KN

VMP-4N(MN) (0305)      Page 2 of 8



Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

Initials: _HN_ _KN_

VMP-4N(MN) (0305)                   Page 3 of 8

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

   **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

      (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) and

Initials: HN KN

VMP-4N(MN) (0305)   Page 4 of 8

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

Initials: _HN/KN_

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

Initials: _HN_ _KW_

VMP-4N(MN) (0305)                    Page 6 of 8

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

21. **Interest on Advances.** The interest rate on advances made by Lender under paragraph 7 shall not exceed the maximum rate allowed by applicable law.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[X] Condominium Rider  [ ] Growing Equity Rider  [ ] Other [specify]
[ ] Planned Unit Development Rider  [ ] Graduated Payment Rider
[ ] Non Owner Occupancy Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    *Kenneth M. Njema  5/27/05* (Seal)
                                    **KENNETH M NJEMA**        -Borrower

_____    *Hellen Njema* (Seal)
                                    **HELLEN NJEMA**           -Borrower

_____(Seal)    _____(Seal)
                       -Borrower                                -Borrower

_____(Seal)    _____(Seal)
                       -Borrower                                -Borrower

_____(Seal)    _____(Seal)
                       -Borrower                                -Borrower

VMP-4N(MN) (0305)                Page 7 of 8

STATE OF MINNESOTA, Hennepin County ss:

On this 27th day of May, 2005, before me appeared
KENNETH M NJEMA* HELLEN NJEMA, an unmarried woman
*an unmarried man

, to me personally known to be the person(s) described in and who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires: 1/31/07
(Seal)



Notary Public

This instrument was prepared by
**Gini Calderon**
Universal American Mortgage Company, LLC
1150 West Grove Parkway Suite 108
TEMPE, ARIZONA 85283

Tax statements for the real property described in this instrument should be sent to:
Universal American Mortgage Company, LLC
Loan Servicing Department
700 NW 107th Avenue 3rd Floor, Miami, FL 33172-3139



CORPORATION SERVICE COMPANY®

# Notice of Service of Process

S1C / ALL
Transmittal Number: 10846349
Date Processed: 02/15/2013

| | |
|---|---|
| Primary Contact: | WF West - WF Bank<br>Corporation Service Company- Wilmington, DELAWARE<br>2711 Centerville Rd<br>Suite 400<br>Wilmington, DE 19808 |
| Entity: | Wells Fargo Bank, National Association<br>Entity ID Number 2013649 |
| Entity Served: | Wells Fargo Bank, N.A. |
| Title of Action: | Kenneth M. Njema vs. Wells Fargo Bank, N.A. |
| Document(s) Type: | Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Washington County District Court, Minnesota |
| Case/Reference No: | Not Shown |
| Jurisdiction Served: | Minnesota |
| Date Served on CSC: | 02/14/2013 |
| Answer or Appearance Due: | Other/NA |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Steven E. Uhr<br>952-239-0346 |
| Client Requested Information: | Matter Management User Groups: [Service of Process] |
| Notes: | Confirmed the summons and complaint were served separately. |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com