UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH M. NJEMA, | Case No. 13-CV-0519 (PJS/JSM) |
| Plaintiff, | |
| v. | ORDER |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

Kenneth M. Njema, pro se.

Charles F. Webber and Jessica Z. Savran, FAEGRE BAKER DANIELS LLP, for defendant.

Plaintiff Kenneth Njema and his sister borrowed more than $178,000 to purchase a house in Cottage Grove, Minnesota, and pledged the house as security for the loan. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") later acquired the mortgage. Njema and his sister had a falling out, and she and her family moved out of the house. Njema then defaulted on the mortgage several times, most recently in early 2011. Wells Fargo conducted a foreclosure sale of the home in May 2012. In February 2013, Njema brought this action, challenging the foreclosure as well as Wells Fargo's actions to secure the property while the mortgage was in default. It appears that, as the result of this and other litigation, Njema remains in the home to this day, nearly five years after defaulting on the mortgage.

Njema originally brought this action with the aid of counsel. As the case progressed, however, Njema and his counsel had a falling out, largely over Njema's insistence that his attorney make frivolous arguments. In May 2014, Magistrate Judge Janie S. Mayeron granted counsel's motion to withdraw on the ground that irreconcilable differences had developed and the attorney-client relationship was no longer viable. ECF No. 94. Judge Mayeron referred Njema to the Federal Bar Association's Pro Se Project in an effort to match him with *pro bono* counsel, ECF No. 91, and stayed the case for one month to permit Njema to seek new counsel, ECF No. 94 at 2.

Njema was not initially successful in obtaining substitute counsel, but in November 2014 new counsel appeared on his behalf. ECF No. 150. Just one month later, however, Njema and his new attorney had a falling out, again because Njema was insisting that his attorney make frivolous arguments. Njema's new counsel filed a motion to withdraw on the basis of irreconcilable differences with Njema. ECF No. 154. Based on counsel's representation that Njema had asked him to withdraw, Judge Mayeron granted the motion. ECF No. 159; *see* ECF No. 161.

Njema then wrote a letter protesting that he had not asked his counsel to withdraw and expressing his opposition to the motion. ECF No. 160. Judge Mayeron vacated her previous order and directed counsel to renew the motion to withdraw. ECF

No. 161. After a hearing, Judge Mayeron denied the renewed motion, but warned Njema that she might permit his counsel to withdraw without substitution if Njema continued to insist that his counsel make frivolous and potentially sanctionable arguments. ECF No. 195 at 13.

The parties then proceeded to brief and argue Wells Fargo's pending motion for summary judgment. Judge Mayeron issued a Report and Recommendation ("R&R") recommending that the Court grant Wells Fargo's motion as to all claims except Njema's trespass claim. ECF No. 220. (The trespass claim arises out of the fact that a contractor of Wells Fargo's changed the locks and cut off the utilities to Njema's home while he still occupied it.) Njema filed an objection to the R&R through counsel and then submitted a (very untimely) pro se objection raising additional (mostly frivolous) arguments. ECF No. 229. The Court adopted the R&R over Njema's (counseled) objection and declined to consider his pro se submission. ECF No. 230.

In late August 2015, shortly after resolving Wells Fargo's summary-judgment motion, the Court issued a notice setting Njema's trespass claim for trial on November 9. ECF No. 232. In accordance with usual practice, Judge Mayeron scheduled a settlement conference for October 8. ECF No. 234. On October 1, Njema filed a pro se motion to hold his own attorney in contempt. ECF No. 239. In his motion, Njema asserted that he had filed a pro se objection to the R&R "as a last means" because

his counsel "abandon[ed]" him and "refus[ed]" to raise issues that Njema wanted addressed.  ECF No. 240 at 1.  Njema asked the Court to order his counsel to file certain motions and, if counsel failed to do so, to pay for substitute counsel.[1]  ECF No. 240 at 24-25.  As Njema's counsel pointed out in his response, Njema's complaints about counsel's conduct were utterly frivolous.  ECF No. 251; *see also* ECF No. 247 (counsel's memorandum in support of third motion to withdraw).

Judge Mayeron canceled the settlement conference and permitted counsel to file a motion to withdraw.  ECF No. 244.  On October 9, Judge Mayeron denied Njema's motion for contempt and granted counsel's motion to withdraw over Njema's opposition, noting that "several of the actions Njema insists [counsel] undertake on his behalf leave [counsel] vulnerable to Rule 11 sanctions."  ECF No. 255 at 10. Judge Mayeron expressly found that counsel's reasons for withdrawal were sufficiently compelling to permit withdrawal despite the imminence of trial.  ECF No. 255 at 8-9.

As noted, trial was scheduled to begin on November 9, and the first of the trial deadlines—for exchanging exhibit lists, deposition designations, proposed jury

---

[1]Specifically, Njema sought an order requiring his counsel to file several frivolous or near-frivolous motions, including a motion for a stay pending appeal, a Fed. R. Civ. P. 50 motion for judgment as a matter of law (despite the fact that trial had not yet begun), and yet another motion to amend the complaint to seek punitive damages.  ECF No. 240 at 24-25.  At the time that Njema sought such an order, Judge Mayeron had already denied counsel's motion for leave to file another motion for punitive damages.  *See* ECF Nos. 231, 236.  Judge Mayeron later denied Njema's pro se request to reconsider.  ECF No. 243, 256, 257.

instructions, and proposed verdict forms—was on October 15. ECF No. 232 at 6. On October 13, Njema filed a motion asking the Court to certify its summary-judgment order for interlocutory appeal. ECF No. 258. The next day, Njema filed a letter seeking a continuance of the trial and asking the Court to reconsider its summary-judgment order. ECF No. 261.

The Court denied Njema's motions to certify or reconsider its summary-judgment order, but granted his request for a continuance of trial until December 14. ECF Nos. 262, 263, 271. The Court did so despite Judge Mayeron's warning (on October 2) that regardless of the outcome of counsel's motion to withdraw, the parties would have to be ready to try the case on November 9. ECF No. 244 at 2.

Wells Fargo's counsel notified the Court that he might have a conflict with the December 14 trial date due to another trial scheduled in the United States District Court for the District of Oregon. ECF No. 267. The Court informed the parties that, if the Oregon trial did not settle, the Court would postpone Njema's trial. In the meantime, however, the Court directed the parties to meet all of the deadlines for disclosing and filing trial materials so that the case could be tried on December 14 or as soon thereafter as possible. ECF No. 268.

Njema refused to obey the Court's orders. Instead, he doubled down on his efforts to keep this litigation from reaching a conclusion. In late 2015, Njema apparently

received notice of the proposed settlement of a class action against Wells Fargo that is pending before Judge Robert W. Pratt in the United States District Court for the Southern District of Iowa. Njema is a member of the putative class. That lawsuit has nothing to do with this lawsuit. In the Iowa action, the class is challenging fees that Wells Fargo imposed on borrowers to recover the cost of property inspections that it performed on properties on which the mortgages were in default. ECF No. 277-1 at 2. Njema has never challenged any such fee in this action.

Even though the two lawsuits are unrelated, Njema latched onto the Iowa class action as an excuse to further delay this action. After receiving notice of the proposed settlement, Njema filed a motion with the Judicial Panel on Multidistrict Litigation ("MDL Panel") to transfer this case to Iowa and filed a motion in this Court to stay this case pending the resolution of the MDL motion. ECF Nos. 274, 277-2. The Court denied the motion to stay, explaining that there was no basis for transferring this case to Iowa. ECF No. 280. The Court explained to Njema that the MDL Panel is highly unlikely to create an "MDL" out of two unrelated cases, particularly when pretrial proceedings in both cases have already concluded. (Njema labors under the mistaken impression that, if the MDL Panel grants his motion, his case will be transferred to Iowa, and Judge Pratt will then rule on the merits of his trespass claim.[2])

---

[2] So far as the Court is aware, the motion to transfer that Njema filed with the Judicial Panel on Multidistrict Litigation remains pending before that body. ECF

Njema filed a notice of appeal and a request for reconsideration. ECF Nos. 281, 282. In response, the Court explained that it would not delay this case pending the resolution of Njema's appeal, but asked Wells Fargo to address the scope of a litigation injunction that Judge Pratt had entered in the Iowa class action. ECF No. 283. Wells Fargo (for whose benefit the injunction had been entered) responded that it did not believe that the injunction encompassed this case and, regardless, it waived the benefit of the injunction to the extent that it may apply. ECF No. 284. In light of Wells Fargo's letter, the Court denied Njema's request for reconsideration. ECF No. 285. Njema then filed another notice of appeal. ECF No. 287. The Eighth Circuit eventually rejected both of Njema's appeals. *See* ECF No. 315.

Njema and Wells Fargo had been ordered to file the first set of trial materials on November 30. ECF No. 263. Wells Fargo filed its trial materials as ordered, but Njema refused. In response to the Court's inquiry, Njema informed the Court that he would not comply with the Court's order because his appeals were pending before the Eighth Circuit and because he did not want to risk violating the litigation injunction in the Iowa case. ECF No. 306. The Court explained to Njema yet again that (1) a notice of appeal from a non-appealable order does not deprive the Court of jurisdiction and (2) in light of Wells Fargo's waiver of any rights it had under the Iowa injunction with respect

---

No. 313-1.

to this case, Njema's concern was unfounded. ECF No. 306. Moreover, a few days later, Judge Pratt issued an order explaining that Njema's trespass claim in this case does not relate in any way to the claims in his class action and clarifying for Njema that the litigation injunction that Judge Pratt entered in his case does not preclude Njema from prosecuting this action. *See Njema v. Wells Fargo Bank, N.A.*, No. 4:15-CV-00431, ECF No. 3 (S.D. Iowa Dec. 9, 2015).

In short, at this point Njema had been told by (1) Judge Pratt, (2) this Court, and (3) Wells Fargo that the injunction entered in the Iowa class action did not prevent him from trying his trespass claim in this action. The Court gave Njema one last chance to submit his trial materials, failing which, the Court warned, it would dismiss Njema's claim without prejudice for failure to prosecute. ECF No. 306.

Njema still refused to comply with the Court's order. In the meantime, however, Wells Fargo informed the Court that the Oregon trial was going forward. *See* ECF No. 309. Because the Court had already committed to rescheduling the trial in the event that the Oregon case went forward, it granted Njema a reprieve from dismissal, but warned him that he would have to comply with the deadlines in the new trial notice. ECF No. 309. The Court did so despite the fact that it strongly desired the parties to meet the trial filing deadlines for the December 14 date regardless of whether trial actually occurred on that date. *See* ECF No. 268.

Trial was rescheduled for February 8, 2016, with the first round of submissions to the Court due on January 21. ECF No. 310 at 6. (As noted, Wells Fargo had already filed its first round of submissions on November 30.) Wells Fargo requested that the Court reschedule the trial to accommodate the schedule of its in-house counsel; Njema objected to Wells Fargo's request. ECF Nos. 311, 312. Two days later, however, Njema reversed course and sought an extension of the trial deadlines, on the grounds that he needed more time to prepare the trial materials. ECF No. 313. The Court denied both parties' requests, noting that, by January 21, Njema would have had over three months to prepare his submissions. ECF No. 314.

A month later, and just a few days before the January 21 deadline, Njema came up with yet another new excuse to delay the trial: Njema filed a letter asking the Court to postpone its deadlines because he was concerned that his filing trial materials in this Court could prejudice the plaintiffs' claims in the Iowa class action under the doctrine of collateral estoppel. ECF No. 317. This was nonsense, and in a letter to Njema, the Court explained why Njema's filing of trial materials would have no impact whatsoever on the claims of the members of the Iowa class.[3] The Court also warned Njema yet

---

[3]The Court explained the following (among other things):

> . . . [Y]our purported concern that the "filing of the pre-trial briefings" will "be *prejudicial* to the 'Huyer' putative class" is absurd. Putting aside the fact that you are not an attorney and you have no standing to litigate on behalf of

again that if he did not comply with the Court's deadlines, the Court would dismiss his trespass claim without prejudice for failure to prosecute. ECF No. 318.

The January 21 deadline has now passed, and Njema has yet again refused to obey the orders of this Court. Instead, he submitted a letter on January 22 asking the Court to reconsider and reiterating his meritless concern that his filing of proposed jury instructions and other trial materials could, through the doctrine of collateral estoppel, prejudice the members of the Iowa class action. ECF No. 322.

---

> the parties to the *Huyer* action [in Iowa], the only thing that I could do that could conceivably affect any litigant in the *Huyer* action (or any other action) is to *enter judgment*. Only a valid and final judgment can have a preclusive effect on anyone. Thus, even if your concern was valid, it would be an excuse only to postpone the *entry of judgment*, not to postpone the deadline for filing proposed jury instructions and other pretrial papers, and not to postpone the trial.
>
> Finally, even the entry of judgment in this case will have no impact whatsoever on any party in the *Huyer* action (save you, of course). None of those parties is a party to this action or in privity with a party to this action, and the question of whether Wells Fargo trespassed on the property of anyone other than you cannot and will not be litigated in this action. Your letter correctly cites the elements of claim preclusion, but then you fail to recognize that *none* of those elements will be present if I enter judgment on your trespass claim and someone later argues that my judgment precludes another party from litigating his or her own trespass claim against Wells Fargo.

ECF No. 318.

The Court has been extraordinarily patient with Njema. The Court granted Njema an extension on the first trial date, despite the fact that the delay was entirely due to Njema's insistence that his attorney file frivolous motions. The Court then gave Njema a second chance to submit trial materials after he refused to comply with the first deadline. And then, after Njema defied the Court's deadlines for a second time, the Court gave him yet another chance to submit trial materials when circumstances conspired to force the rescheduling of the trial.

The Court has also bent over backwards to respond to each of Njema's concerns. Each time Njema came up with another excuse for delaying his trial, the Court explained why his concerns were unfounded and reminded him that he must comply with the Court's orders. But just as Njema refused to listen to his two attorneys, he has refused to listen to the Court. Njema has now knowingly and deliberately violated this Court's orders for the third time.

Scheduling a trial is no simple matter. It requires the coordination of many schedules—those of the Court, counsel, the parties, and the witnesses, not to mention those of the members of the public who are called to serve as jurors. The Court must order a jury many weeks in advance and spend considerable time preparing for the trial, which is impossible without the timely submission of trial materials. The Court

must also block out time on its calendar to conduct the trial—time that goes to waste if the parties obstruct the Court's ability to prepare for and try the case.

The Court's current calendar illustrates the types of challenges that a trial court faces in bringing cases to trial in a timely manner. The Court is currently in the midst of a complex, multi-week white-collar criminal trial, and it has another complex, seven-defendant criminal trial starting later in February. Sandwiched between these two criminal trials—which, for constitutional and statutory reasons, must take priority over civil trials—is Njema's civil trial. Because Njema has refused to comply with the Court's orders, there is no chance that the Court can try his case any time soon, even though his case has been pending in this Court for nearly three years.

This is one of the busiest federal courts in the United States. This Court simply cannot function if litigants such as Njema can defy court orders and say to the Court, in essence, "you'll try my claim if and when I let you try my claim." The Court cannot permit a party to defy Court orders, waste Court resources, disrupt the lives of potential jurors, witnesses, and opposing counsel, and prejudice the opposing party in this manner. For this reason, it will dismiss Njema's remaining claim without prejudice for failure to prosecute. *See Link v. Wabash R.R.*, 370 U.S. 626, 629-30 (1962) (federal trial courts have the power to dismiss an action for failure to prosecute "to prevent undue

must also block out time on its calendar to conduct the trial—time that goes to waste if the parties obstruct the Court's ability to prepare for and try the case.

The Court's current calendar illustrates the types of challenges that a trial court faces in bringing cases to trial in a timely manner. The Court is currently in the midst of a complex, multi-week white-collar criminal trial, and it has another complex, seven-defendant criminal trial starting later in February. Sandwiched between these two criminal trials—which, for constitutional and statutory reasons, must take priority over civil trials—is Njema's civil trial. Because Njema has refused to comply with the Court's orders, there is no chance that the Court can try his case any time soon, even though his case has been pending in this Court for nearly three years.

This is one of the busiest federal courts in the United States. This Court simply cannot function if litigants such as Njema can defy court orders and say to the Court, in essence, "you'll try my claim if and when I let you try my claim." The Court cannot permit a party to defy Court orders, waste Court resources, disrupt the lives of potential jurors, witnesses, and opposing counsel, and prejudice the opposing party in this manner. For this reason, it will dismiss Njema's remaining claim without prejudice for failure to prosecute. *See Link v. Wabash R.R.*, 370 U.S. 626, 629-30 (1962) (federal trial courts have the power to dismiss an action for failure to prosecute "to prevent undue

delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts").

As the Court has already noted, it has considered lesser sanctions but finds that anything less than a dismissal without prejudice would be insufficient to deter Njema from defying Court orders and would also be an insufficient sanction for Njema's willful violations.  Njema knows exactly what he is doing:  Despite the fact that he has apparently not made a mortgage payment for five years, he has been able to live rent-free in his home by tying up Wells Fargo in mostly frivolous litigation and then by doing everything possible to delay the conclusion of that litigation.  *See* ECF Nos. 320, 321.

Monetary sanctions would have no impact.  Njema has no money.  He is a pro se party proceeding *in forma pauperis*.  ECF No. 90.  (Njema did not pay his substitute counsel any fees at all.  ECF No. 252 ¶¶ 2-3.)  In addition, Njema's history with his previous counsel demonstrates that, once Njema decides he is in the right, he will not be persuaded otherwise, no matter how many times it is explained to him that his positions are frivolous.  Indeed, despite two federal judges informing Njema that his trespass claim in this case has absolutely nothing to do with the inspection-fee claims in the Iowa class action, Njema continues to assert that *filing trial materials* in this case

could, through the doctrine of collateral estoppel, prejudice members of the class in Iowa (none of whom is a party to this action).

Consequently, there is no possibility that monetary sanctions will persuade Njema to comply with this Court's orders. Such a toothless sanction would only give Njema what he wants—more delay, and more months of rent-free living.

For these reasons, the Court dismisses Njema's trespass claim without prejudice.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff's trespass claim is DISMISSED WITHOUT PREJUDICE for failure to prosecute.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 25, 2016

 s/Patrick J. Schiltz  
Patrick J. Schiltz  
United States District Judge